UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LESLIE ANN CISLER,**

      **Plaintiff,**

  v.                                    **Civil Action 2:20-cv-3072**
                                          **Chief Judge Algenon L. Marbley**
**COMMISSIONER OF SOCIAL**          **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Leslie Ann Cisler, ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Response in Opposition (ECF No. 8), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** (ECF No. 7) and that the Commissioner's decision be **AFFIRMED**.

        **I.**        **BACKGROUND**

Plaintiff protectively filed her application under Title II of the Social Security Act for a period of disability and disability insurance and Title XVI for supplemental security income benefits on July 7, 2016. (R. 597.) Plaintiff alleged a disability onset of April 23, 2015. (*Id*.)

Plaintiff's application was denied initially on August 14, 2016, and upon reconsideration on April 4, 2017. (*Id*. at 432–47, 466–87.) Plaintiff sought a hearing before an administrative law judge. (*Id*. at 538–40.) Administrative Law Judge Heidi Southern (the "ALJ") held a hearing on January 25, 2019, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 404–31.) Vocational expert Michael Klein (the "VE") also appeared and testified. (*Id*.) On April 16, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 8–39.) On April 20, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–7.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff advances two contentions of error. (Pl.'s Statement of Errors 4–7, ECF No. 7.) Namely, Plaintiff asserts that remand is required because: (1) the ALJ failed to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); and (2) the RFC the ALJ assessed would preclude sedentary work and, therefore, the ALJ's findings at step five are not supported by substantial evidence. (*Id*.)

## II. THE ALJ DECISION

On April 16, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 8–39.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since April 23, 2015, Plaintiff's alleged disability onset date. (*Id.* at 14.) At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, degenerative joint disease of the right and left shoulders, bilateral sensorineural hearing loss, gastroesophageal reflex disease, hiatal hernia, obesity, anxiety disorder, depressive disorder, and post-traumatic stress disorder. (*Id.* at 14–16.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16–24.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual function capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following limitations: (1) lifting and carrying up to 10 pounds occasionally and frequently; (2) sitting and standing/walking about six hours during an 8-hour workday; (3) no overhead reaching or reaching in all directions with the right upper extremity; (4) frequent overhead reaching and reaching in all other directions; (5) occasional use of hand controls with the right upper extremity and frequent use of hand controls with the

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

>left upper extremity; (6) no crawling or climbing of ladders, ropes, or scaffolds; (7) occasional balancing, stooping, kneeling, crouching, and climbing ramps and/or stairs; (8) no exposure to unprotected heights and moving mechanical parts; (9) avoid concentrated exposure to vibration and extreme heat; (10) limited to working in an environment with no more than moderate noise level; (11) limited to performing simple, routine, and repetitive tasks; (12) the individual is not able to perform at a production rate pace, defined as assembly line work, but can perform goal-oriented work, defined as office cleaner type of jobs; (13) limited to making simple, work-related decision; (14) occasional contact with coworkers and supervisors, but no contact with the public; (15) able to tolerate few changes in a routine work setting with those changes easily explained and introduced gradually; and (16) no work involving conflict resolution.

(*Id.* at 24.) The ALJ then relied on the hearing testimony of the VE to conclude that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 30–31.) She therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 31.)

### III.  RELEVANT RECORD EVIDENCE

The following summarizes the record evidence relevant to Plaintiff's statement of errors:

**A.  Medical Treatment Records—Plaintiff's Right Shoulder, Arm, and Hand**

Among other health conditions, the record reflects that Plaintiff had ongoing issues with her right shoulder, arm, and hand. For example, Plaintiff has had several right shoulder surgeries. In July 2016, Plaintiff had a rotator cuff repair surgery on her right shoulder. (R. 780–82, 1726–28.) She had another right rotator cuff repair in December 2016 "because of severe loss of function of the arm." (*Id.* at 1724–25.) Plaintiff had a third rotator cuff repair surgery on her right shoulder in June 2017. (*Id.* at 1733–35.) In September 2017, Plaintiff had a shoulder replacement surgery on her right shoulder. (*Id.* at 1729–32.) Plaintiff also had a surgery to fuse her C6 and C7 vertebrae in January 2016. (*Id.* at 750–51.) Following this surgery, Plaintiff reported that her symptoms did not improve. (*Id.* at 757–59.)

4

In January 2016, Plaintiff had imaging of her neck that showed "[l]arge posterior midline disc extrusion" and "marked right ventral cord compression with severe central canal stenosis." (R. 731–32.) In June 2016, Plaintiff had imaging done on her right shoulder which showed "moderate tendinopathy" and "a probable small full-thickness tear." (R. 713–14, 823–24.) Plaintiff again had imaging done on her right shoulder in October 2016. (R. 942, 1720–21.) The imaging showed she did not have a full-thickness rotator cuff tear, but did show moderate bursitis. (*Id.*) In April and August 2017, more imaging showed that Plaintiff had developed a full-thickness rotator cuff tear. (*Id.* at 983–84, 1043–46.)

The record reflects that Plaintiff attended physical therapy complaining of right arm pain. Plaintiff complained of arm pain to her physical therapist in April and May 2016. (*See, e.g.* R. 833–37, 854–66.) In July 2016, Plaintiff attended physical therapy following her first shoulder surgery. (R. 801–15, 952–63.) Plaintiff told her provider she thought she was worsening with physical therapy. (*Id.*) She attended physical therapy again in December 2016. (R. 966–67.)

Plaintiff repeatedly reported right arm and shoulder pain. Plaintiff reported right arm pain to a provider in December 2015. (R. 723–28.) In January 2016, Plaintiff reported right shoulder, arm, and hand pain and weakness. (*Id.* at 740–44, 868–72.) Plaintiff saw another provider in May 2016 and again complained of right shoulder pain. (*Id.* at 708–712.) At a July 2016 visit, her primary care provider noted that Plaintiff "had a torn bicepts [*sic*] muscle and extensive arthritis of the [right shoulder] joint." (*Id.* at 928.) In August 2016, Plaintiff reported right shoulder pain during a mental health assessment. (*Id.* at 914–26.) She again reported right shoulder pain in November 2016 and her provider suggested surgery to repair a partial rotator cuff tear. (*Id.* at 964–65.) In September 2017, Plaintiff reported right shoulder pain, but her provider noted that her right shoulder was stable. (*Id.* at 1198–1200.)

**B.     Plaintiff's Hearing Testimony**

Plaintiff testified at the January 25, 2019 hearing. (R. 404–31.) Among other topics, she testified about her issues with her right shoulder, arm, and hand. (*Id.* at 414–19). Plaintiff testified that lifting things caused her increased pain in her neck. (*Id.* at 415.) She testified that, prior to a shoulder replacement surgery, she experienced pain "every time I tried to use my right arm, my right shoulder." (*Id.* at 416.) Plaintiff said that although she has had less pain following the surgery, she cannot use her right "shoulder very much" and that she has "limited movement." (*Id.* at 417.) She further testified that she was able to put her arm in front of her, but said she "can't go straight up and I can't go very far up with this side." (*Id.*) Plaintiff stated that her shoulder pain "stays around a five to a six out of ten." (*Id.*) She testified that she could pick up a gallon of milk with her left arm, but not with her right arm. (*Id.* at 418–19.)

**C.     VE's Hearing Testimony**

Michael Kline, Ph.D., (the "VE") provided testimony regarding Plaintiff's ability to perform her past relevant work. (R. 427.) Plaintiff did not object to him testifying as a vocational expert. (*Id.*) The ALJ asked the VE to classify Plaintiff's previous employment, and the VE testified, in relevant part, as follows:

> The first title would be veterinary assistant. The DOT code is 079.361–014. That position by DOT is medium, skilled, SVP: 6. And I believe it was performed at the level of exertion. The second job is crane operator. It was a hand crane she operated. The DOT [code] is 921.633–070. That position is medium, semi-skilled at SVP: 4.

(R. 427.) The ALJ then asked the VE the following hypothetical:

> Q [P]lease assume a hypothetical individual of the [Plaintiff's] age, education and work experience who would be limited to lifting and carrying no more than ten pounds occasionally or frequently. However, sitting, standing, and walking could be performed consistent with light work, so up to six hours each day in an[] eight-hour workday. The individual could frequently use foot controls bilaterally. Could occasionally use hand controls with the right upper extremity and frequently use hand controls with the left upper extremity. The individual would be limited to

6

occasional overhead reach and reaching in all other directions with the right upper extremity, but frequent overhead reach and reaching in all other directions with the left upper extremity. The individual could frequently climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. The individual could occasionally stoop, kneel, and crouch, but could never crawl. The individual should have no exposure to unprotected heights or moving mechanical parts. And the individual should avoid concentrated exposure to extreme heat or vibration. The individual would be limited to performing work in an environment with no more than a moderate noise level. The individual would be limited to performing simple, routine, repetitive tasks. The individual could not perform work at a production rate pace, which I will define as assembly line work. But the individual could perform goal-oriented work, which I will define as an office cleaner type of job. The individual would be limited to making work-related decisions. The individual would have occasional contact with supervisors and coworkers, but no contact with the general public. The individual would be limited to tolerating few changes in a routine work setting with those changes being easily explained and introduced gradually. And finally, the individual's work should not involve conflict resolution. Dr. Klein, based on those limitations, first of all, could the hypothetical individual perform any of the [Plaintiff's] past work, either as actually performed or generally performed?

\* \* \*

A   Okay. I don't believe the past work could be performed. I think with the weight limitations to ten pounds occasionally, five frequently along with the remainder of the limitations, I think this would be a significantly restricted sedentary profile.

Q   Okay.

A   Mainly restricted because of the production limitations and the contact with others. So there would be a title of a lens inserter, DOT 713.687–026, sedentary, SVP: 2. About 60,000 such jobs nationally. There would be one title of surveillance system monitor. DOT would be 373.367–010. There are approximately 100,000 such jobs national[ly]. And finally, there would be title of document preparer, which is sedentary, SVP: 2. The DOT is 669.687–014. There would be approximately 65,000 nationally. . . .

(R. at 427–29.)

The ALJ then asked the VE if his testimony would change if she changed "the manipulative limitations for the right upper extremity to no overhead reaching or reaching in all other directions." (R. 430.) The VE answered, "No, I don't believe so." (*Id.*) The ALJ asked if

7

his testimony was consistent with the DOT, and the VE responded, "yes." (*Id.*)  On cross-examination, Plaintiff's counsel only asked the VE for clarification of a DOT code number.  (*Id.*)

## IV.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff contends that remand is required for the following reasons: (1) the ALJ failed to resolve conflicts between the VE's testimony and the DOT; and (2) the RFC the ALJ assessed would preclude sedentary work and, therefore, the ALJ's determination at step five is not supported by substantial evidence. (Pl's Statement of Errors 4–7, ECF No. 7.) For the reasons discussed below, the undersigned finds that each contention of error is without merit.

**A.     The ALJ did not err in relying on the VE's testimony.**

Plaintiff argues that the ALJ committed reversable error by relying on the VE's testimony because, according to Plaintiff, the VE's testimony conflicts with the DOT. (Pl's Statement of Errors 4–7, ECF No. 7.) Specifically, Plaintiff contends that, because the ALJ determined that Plaintiff "cannot reach in any direction with her right dominant arm, the DOT indicates that [Plaintiff], in fact, could not perform the jobs listed by the VE." (*Id.* at 4–5.)

When the ALJ determines, as she has here, that a claimant cannot perform her past relevant work, the burden shifts to the Commissioner to prove that the claimant has the capacity to perform other work. 20 C.F.R. § 404.1560(c)(2). To meet its burden, "the Commissioner must make a finding 'supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). "[T]he testimony of a vocational expert identifying specific jobs available in the [ ] economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step [five] that the claimant can perform other work." *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 549 (6th Cir. 2004) (collecting cases).

9

Social Security Ruling 00–04p states, in pertinent part, that "[w]hen there is an apparent unresolved conflict between VE [ ] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [ ] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." SSR 00–04p, 2000 WL 1898704, *2. Where a conflict is apparent and the ALJ fails to resolve or explain the conflict, remand may be appropriate. *Dawson v. Berryhill*, No. 1:17-CV-02090, 2018 WL 6681715, at *4 (N.D. Ohio Nov. 26, 2018), *report and recommendation adopted*, 2018 WL 6675306 (Dec. 19, 2018) (collecting cases). However, for Ruling 00–04p to apply, Plaintiff must identify an actual conflict between the VE's testimony and the DOT. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009); *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). Further, the ALJ and the VE are not bound by the DOT in making disability determinations. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).

Here, the ALJ asked the VE to opine on available jobs for a hypothetical individual who could "occasionally use hand controls with the right upper extremity" and who had "limitations for the right upper extremity to no overhead reaching or reaching in all other directions." (R. 427, 430.) In other words, the ALJ asked about an individual with significant limitations to the use of her right arm and hand, and the VE responded that several jobs that were available to such an individual. (*Id.* at 429–30.)

Moreover, that a job requires "reaching," does not imply that it requires those tasks to be performed with both hands. According to the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), "reaching" is defined as "[e]xtending

10

hand(s) and arm(s) in any direction." SCO, App. C at C–8.  This definition contemplates that the activity may be done with only one hand.  As the example occupations listed by the VE do not specifically require reaching, handling, or fingering with the right hand or with both hands, there is no apparent conflict between the VE's testimony and the DOT.  *See Shaulis v. Comm'r of Soc. Sec.*, No. 2:18-CV-1266, 2019 WL 3773769, at *5 (S.D. Ohio Aug. 12, 2019) (plaintiff's limited ability to perform overhead reaching with her left hand was not inconsistent with VE's testimony that she could perform jobs requiring frequent reaching).

Even if a conflict were apparent, the Sixth Circuit has stated that "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by Social Security Ruling 00–04p.  This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  The fact that plaintiff's counsel did not do so is not grounds for relief."  *Beinlich*, 345 F. App'x at 168–69 (citing *Lindsley*, 560 F.3d at 606); *see also Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("[N]othing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge.").

At the ALJ hearing, Plaintiff's attorney briefly cross-examined the VE, but did not inquire as to any inconsistency between his testimony and the DOT.  The transcript reflects that Plaintiff's attorney had a full and fair opportunity to question the VE at the hearing, yet did not do so.  Accordingly, it is **RECOMMENDED** that this contention of error be **OVERRULED**.

**B.      Plaintiff is not precluded from performing sedentary work.**

Plaintiff next asserts that the ALJ's step-five finding is not supported by substantial evidence because it relied on invalid testimony from the VE.  (Pl.'s Statement of Errors 7, ECF

11

No. 7.)  As the Plaintiff points out, the RFC provides for "no overhead reaching or reaching in all directions with the right upper extremity;" and "occasional use of hand controls with the right upper extremity and frequent use of hand controls with the left upper extremity."  (R. 24.)  Plaintiff argues that these restrictions preclude her from performing sedentary work.  (Pl.'s Statement of Errors 7, ECF No. 7.)  Thus, according to Plaintiff, the hypothetical the ALJ asked the VE was invalid because it included these upper right extremity restrictions but did not preclude sedentary work.  (*Id.*)  Plaintiff concludes that the VE's testimony, based on a flawed hypothetical, does not provide substantial evidence that there is a significant number of jobs in the national economy that she can perform.  (*Id.*)

Plaintiff cites solely to Social Security Ruling 83–12 to support her argument that she is unable to perform sedentary work.  (Pl.'s Statement of Errors 7, ECF No. 7.)  Ruling 83–12 provides, in pertinent part, that "[P]ersons who have lost the use of an upper extremity . . . would generally not be expected to perform sedentary work because most unskilled sedentary jobs require good use of both hands."  SSR 83–12, 1983 WL 31253 at *4.  Plaintiff argues that, because the RFC limited her to no reaching with her upper right extremity, Social Security Ruling 83–12 precludes her from sedentary work.  (Pl.'s Statement of Errors 7, ECF No. 7.)

Plaintiff's reliance on Social Security Ruling 83–12 is misplaced.  Ruling 83–12 "expressly states that its purpose is to clarify policies where the individual has *only* exertional limitations."  *Bumgardner v. Sec'y of Health & Human Servs*., 917 F.2d 24 (Table) at *5 (6th Cir. 1990).  Indeed, the ruling states that it is a "framework for adjudicating claims in which an individual has *only* exertional limitations."  SSR 83–12, 1983 WL 31253 at *1 (emphasis added).  Here, Plaintiff's RFC includes both exertional limitations (*e.g.*, "lifting and carrying up to 10 pounds occasionally and frequently") and non-exertional limitations (*e.g.*, "no overhead reaching

12

or reaching in all directions with the right upper extremity"). (R. 24.) Thus, because her RFC contains non-exertional limitations, Social Security Ruling 83–12 is inapplicable.

Moreover, even if Ruling 83-12 *does* apply, the Ruling specifically contemplates that, although loss of an upper extremity will "generally" preclude sedentary work, individuals may still be able to perform certain sedentary jobs depending on their particular limitations. "Given an individual's particular RFC, a [vocational expert] will be able to determine the size of the remaining occupational base, cite specific jobs within the individual's RFC, and provide a statement of the incidence of those jobs in the region of the individual's residence or in several regions of the country." SSR 83-12, 1983 WL 31253 at *4. This is precisely what the VE did at the hearing. The VE specifically found that a hypothetical individual with Plaintiff's RFC limitations could perform the sedentary position of "lens inserter," and opined that there are "[a]bout 60,000 such jobs nationally." (R. 429.) 60,000 jobs nationally is sufficient to provide substantial evidence that a "significant number" of jobs exist in the national economy that Plaintiff can perform. Indeed, the United States Court of Appeals for the Sixth Circuit has determined that 6,000 jobs in the national economy is sufficient. *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'") (collecting cases). Thus, even though the ALJ's hypothetical to the VE imposed limitations on the use of Plaintiff's right upper extremity, the VE's response provided substantial evidence for the ALJ's step-five findings that there is a significant number of jobs available in the national economy that someone with Plaintiff's RFC could perform, consistent with Ruling 83-12. Accordingly, it is **RECOMMENDED** that this contention of error be **OVERRULED**.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that the Commissioner's decision be **AFFIRMED**.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE